UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

ARAZ ALALI,

           Plaintiff,

   -against-

CITY OF NEW ROCHELLE, N.Y.,

           Defendant.

------------------------------------------------------------x

08 Civ. ( )

COMPLAINT

Jury Trial Demanded

FILED
MAY - 6 2008
USDC WP SDNY

08 CIV. 4273

      Plaintiff ARAZ ALALI, by his attorneys Lovett & Gould, LLP, for his complaint respectfully states:

## NATURE OF THE ACTION

      1. This is an action for compensatory damages proximately resulting from Defendant's violation of Plaintiff's right: i) to Equal Protection as guaranteed him by reason of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983; to free speech as guaranteed him by reason of the First Amendment to the United States Constitution, 42 U.S.C. §1983; and ii) to be free from retaliation by reason of his having opposed activity rendered illegal by reason of Title VII, 42 U.S.C. §2000e *et. seq*.

## JURISDICTION

      2. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §1331, 1343. On February 12, 2007, Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission; on that same date Defendant was notified by Plaintiff's counsel in writing as to the EEOC filing and cautioned against

1

causally related retaliation. On August 24, 2007, the EEOC duly issued to Plaintiff a Notice of Right to Sue. Thereafter and on November 11, 2007, Plaintiff commenced a Title VII action against the City of New Rochelle [Alali v. City of New Rochelle, 07 Civ. 9912 (CLB)(hereinafter "Alali I")]. Alali I is pending with a discovery cut-off date of May 31, 2008.

## THE PARTIES

3. Plaintiff ARAZ ALALI is a citizen of the United States, a domiciliary of the State of New York, and a resident of the Northern Counties. At all times relevant to this complaint he was employed as a Police Officer by the Defendant, having previously been employed as such by *inter alia* the City of New York. Plaintiff is of Iraqi national origin, has a dark complexion, and is the only Police Officer of Middle Eastern descent who has ever been employed by the Defendant.

4 Defendant CITY OF NEW ROCHELLE, New York, is a municipal corporate subdivision of the State of New York duly existing by reason of and pursuant to the laws of that State.

## THE FACTS

5. On February 15, 2007, Defendant commenced against Plaintiff a substantially frivolous disciplinary proceeding (involving the making of memo book entries and *inter alia* issuance of traffic summonses) in connection with which Plaintiff was suspended without pay for thirty days. Following the conduct of the resulting disciplinary hearing

2

and on May 5, 2008, the Defendant's Police Commissioner imposed on Plaintiff a penalty of an additional thirty day's suspension without pay.

6. In the intervening period of time, between commencement of that disciplinary proceeding and the imposition of punishment:

    a. During a private Christmas party held in December 2007 at the home of New Rochelle Police Sergeant David Lonerghan, a sworn member of the New Rochelle Police Department [Timothy Adrian, who was on duty assigned to the Department's "Critical Incident Unit (hereinafter "CIU"), in uniform and consuming alcoholic beverages] unlawfully "loaned" a Taser to another sworn member (Christopher Castiglia, who was not authorized to carry/use a Taser and who was consuming alcoholic beverages) who in turn shot a Community Service Officer (Kenneth Schnea) - - in the presence of a number of supervisory personnel including Lt. George Rosenbergen. Neither the Castiglia nor Adrian was suspended. Neither was subjected to formal disciplinary charges. Adrian remains in CIU. Their "punishment" was forfeiture of five days vacation despite the circumstance that their conduct violated the New York State Penal Law. No disciplinary action was taken with respect to Rosenbergen, or any of the other supervisory officers present, not one of whom reported the commission of this felony.

    b. A recently hired Police Officer (Michael Vaccaro), who for reasons unexplained passionately dislikes seatbelts, used a pocket knife to completely sever the driver and passenger side seatbelts in the Police Department's newly purchased prisoner transport bus #13. As a proximate result the bus was taken out of service and prisoner transport services were required to be performed in patrol cars at a waste of thousands of

3

dollars in overtime expenditures. The officer who committed this felony was not suspended and was not subjected to formal disciplinary charges. The "punishment" imposed was a loss of four days' salary. Shortly prior to Vaccaro's being hired as a Police Officer he was arrested for assault and banned from entering a commercial premises known as New Roc City. Notwithstanding that circumstance his is currently assigned by the Defendant to patrol in New Roc City as a Police Officer.

    c. P.O. Craig Wolf, while out on a job injury, transported Plaintiff (who at the time was out sick and therefore was subject to the same rules as officers out on job injury) to his attorney's office in technical violation of departmental rules. As a result Plaintiff was suspended for thirty days without pay and is now the subject of a second disciplinary proceeding for which the Defendant is seeking termination of employment. P.O. Wolf was not suspended, was not brought up on formal disciplinary charges, or in any other way disciplined/punished. In May of 2008 Wolf was promoted to "Field Training Officer" a position commanding a salary increment.

    d. On April 27, 2008, Police Sergeant Kyle Wilson discovered a bag of cocaine on the rear of police car #3, which had most recently been operated by Police Officer Sean Kane. Kane was not subjected to a payless suspension and was not subjected to either any formal disciplinary action or command punishment/discipline of any kind. Instead the supervisor instructed a civilian member of the Police Department to voucher the cocaine and, without any evidence connecting the cocaine to any particular person, directed that the last arrestee to be transported in car #3 be charged with possession of a controlled substance.

4

e. Detective Mark Pastore intentionally drove a patrol car into Police Officer Michael Vaccaro following which Vaccaro reported this vehicular assault. By way of punishment for reporting the crime, Vaccaro was placed on a walking post for a week. No disciplinary action of any kind was taken with respect to Taspore.

f. Police Officer Jason Buono, while out on claimed "job injury", was caught playing golf. He was not subjected to a suspension without pay. He was not formally charged with disciplinary violations. He forfeited as total "punishment" five vacation days.

g. Police Officer Keith Murphy intentionally drove a marked patrol car off of his assigned post, parked behind a school, and slept while being paid to provide police services. In that connection he not only was off post, a disciplinary infraction, but he had not called out for a meal break (his claimed excuse for "cooping") or made required memo book entries (two additional infractions). He was not suspended. He was not formally served with disciplinary charges. His total "punishment" was a loss of one day's pay. Most recently Murphy was promoted to the Department's "PACT" ("Police and Community Together") unit where: i) he is free to set his own work schedule and; ii) he will, as a result of that assignment, receive a detective shield.

h. Sergeant David Rodriguez, accused of raping a teenage female, has been arrested and arraigned on that charge. He was suspended **with** pay and has not been the subject of formal disciplinary charges.

i. Police Officer Christopher Guglielmo intentionally disregarded a direct order given by Sergeant David Lonerghan to remain at New Rochelle High School event

5

after midnight. By way of "punishment" Guglielmo received a walking post for one week without any payless suspension and/or formal disciplinary action.

j. During a "riot" at New Roc city involving Blacks from Bronx County, Captain Kevin Kealy used the police departmental communication system to refer to the participants in the "riot" as "Zulus". For this gross racial slur he was not suspended without pay. He was not subjected for formal disciplinary action. His entire "punishment" consisted of the loss of five days' vacation. Plaintiff through counsel expressed, to Defendant's knowledge, his concern regarding Kealy's racist remark.

k. Police Officer Robert LaBarbara, while assigned at a street crossing near the City's High School, abandoned his post and sat in his patrol car reading The Daily News - - while children were required to cross the street with heavy motor vehicle traffic and no police supervision. Caught in this misconduct by the City Manager, Charles Strome, LaBarbera was neither suspended without pay nor subjected to either formal or command disciplinary action.

l. Police Officer Edgar Sanchez, angered by Maryanne Manning's (a Community Service Officer) termination of their relationship, threatened to kill Manning with a sword which he brandished to her. He was temporarily placed on modified duty (and allowed to work), required to take a psychological examination, and then was promptly returned to full duty without a payless suspension, formal and/or command disciplinary action.

m. Police Officer Craig Wolf, while on a midnight tour of duty, without justification pointed his duty weapon at the boyfriend (K. Dixon) of Community Service Officer Dawn Holder. Dixon, fearful that he would be shot, fled - - chased by Wolf - -

6

and took "cover" behind Community Service Officer Ronnie Brown. Wolf then pointed his duty weapon at both Brown and Dixon for not lawful reason. By way of "punishment", Wolf was reassigned from the midnight tour to the 4:00 p.m. to midnight shift.

        n. Police Officer Andrew Rivera, following roll call for his shift, took sick leave, a circumstance which under the PBA-City collective bargaining agreement permitted the City to take only one-half a sick day from his leave bank. Instead a full sick day was taken from him. When the PBA brought the error to Captain Kealy, he immediately corrected it and reduced the amount of sick leave to one-half day. Weeks thereafter Plaintiff took sick leave following roll call on his shift and was docked, in violation of the collective bargaining agreement, a full sick day. When the PBA brought the error to Captain Kealy he refused to make a correction on the premise that "Alali is a special case".

       7. Although Plaintiff was, in terms of departmental rules and disciplinary accountability, identically situated to each of the members of the Department referenced in the preceding paragraph "6", Plaintiff was accorded disparate treatment by the imposition of a sixty day payless suspension which was motivated in whole and/or substantial respect by reason of his: i) national origin; ii) assertion of his rights pursuant to Title VII and his opposition to systemic race-based discrimination in the workplace; and/or iii) his whistle-blowing with regard to departmental corruption.

       8. In view of the sixty day payless suspension imposed in connection with the first disciplinary proceeding and the commencement and now prosecution of the second disciplinary proceeding referenced in paragraph "6(c)", *supra* Plaintiff has been chilled in

the prospective exercise of his First Amendment rights and will no longer express his concerns departmentally regarding: i) corruption; ii) on-the-job commission of crimes by sworn members of the Police Department; and/or the Police Department's Administration condoning, encouraging and/or ratifying such behavior on a daily basis.

9. As a proximate result of Defendant's conduct Plaintiff has been: chilled in the exercise of his free speech rights; suffered financial damages and related losses of fringe benefits and retirement benefits; publicly humiliated; publicly embarrassed; rendered anxious; accorded disparate treatment by reason of his national origin and race; caused emotional upset and he has otherwise been rendered sick and sore.

## AS AND FOR A FIRST CLAIM

10. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "9", inclusive.

11. Under the premises Defendant's retaliatory conduct violated Plaintiff's rights as guaranteed by reason of Title VII.

## AS AND FOR A SECOND CLAIM

12. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "9", inclusive.

13. Under the premises Defendant's conduct violated Plaintiff's right to Equal Protection.

## AS AND FOR A THIRD CLAIM

14. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "9", inclusive.

15. Under the premises Defendant's conduct violated Plaintiff's right to free speech.

Dated: White Plains, N.Y.
       May 5, 2008

> LOVETT & GOULD, LLP
> By: _____
> Jonathan Lovett (4854)
> Attorneys for Plaintiff
> 222 Bloomingdale Road
> White Plains, N.Y. 10605
> 914-428-8401